United States Bankruptcy Court
Northern District of Illinois
Eastern Division

| | |
|---|---|
| In re:<br><br>Setters' Housing Service, Inc.,<br><br>　　　　　　　　Debtor. | |
| Settlers' Housing Service, Inc.,<br><br>　　　　　　　　Plaintiff<br><br>　v.<br><br>Bank of Schaumburg,<br><br>　　　　　　　　Defendant. | Bankruptcy No. 13-bk-28022<br><br>Chapter 11<br><br>Adversary No. 13-ap-1328 |

**MEMORANDUM OPINION ON BANK OF SCHAUMBURG MOTIONS TO DISMISS AND STRIKE**

This adversary proceeding arises out of and relates to the Chapter 11 case of Settlers' Housing Service Inc. ("Settlers'"). Debtor–Plaintiff Settlers' is an Illinois nonprofit dedicated to fulfilling the housing needs of recently arrived legal immigrants. Two pending motions concern the Third Amended Complaint ("Complaint"). The prior procedural history is detailed in a prior memorandum opinion dismissing parts of the Second Amended Complaint. *In re Settlers' Housing Service Inc.*, 514 B.R. 483 (N.D. Ill. 2014).

The Third Amended Complaint ("Complaint") alleges the following: At the closing of the sale of multiple properties from another bank customer to Settlers', the Bank of Commerce set a trap by surreptitiously burying a document providing for a line of credit secured by a mortgage on the Washington–Taylor Property, and cross-collateralizing of all outstanding mortgages, into a thick stack of closing documents. An outright loan and documents for it at the time would have aroused suspicions of Settlers' president KJ Lodico because she hadn't asked for any additional loan for Settlers'. The alleged trap was sprung when Settlers' later found itself in need of money

to pay property taxes, which the Bank of Commerce allegedly knew would happen because the properties sold to Settlers' could not generate enough income to pay necessary expenses. Once the need became manifest, Settlers' drew upon the line of credit, and the equity Settlers' had held in the Washington–Taylor Property became additional collateral of Bank of Commerce's that secured the entire Settlers' loan portfolio. The Bank of Commerce allegedly needed that collateral to help it fend off being shut down by banking regulators.

The Third Amended Complaint is pleaded in fourteen Counts:

1. Equitable Subordination
2. Aiding and Abetting Breach of Fiduciary Duty
3. Fraudulent Misrepresentation
4. Fraudulent Concealment
5. Breach of Illinois Consumer Credit Act
6. Fraud, Illegality and Unenforceability Regarding Washington–Taylor Mortgage
7. Constructive Fraud
8. Setoff
9. Unjust Enrichment
10. Conspiracy to Defraud and Civil Conspiracy
11. Tortious Interference With Contract
12. Breach of Fiduciary Duty
13. Conversion and Accounting
14. Improper Post–Petition Interest and Receiver's Fees

Relief requested in the complaint seeks disallowance or equitable subordination of the Bank's claim, avoidance or rescission of the mortgage on the Washington–Taylor Property, compensatory, statutory, and punitive damages, attorney's fees, and any other relief that may be warranted.

The Bank filed an answer, and simultaneously filed a Motion to Strike Counts 2 and 12 along with certain factual allegations in the complaint, and a separate Motion to Dismiss Counts 3, 4, 5, 6, 7, 10, 13, and 14, with prejudice. For reasons discussed below,

the Bank's motions to dismiss and strike will be granted in part, and Counts 2, 4, 7, 12, 13, and 14 will be dismissed with prejudice, and otherwise denied.

## FACTS AS PLEADED

The following facts are as alleged in Settlers's Complaint. Because this is a motion to dismiss, all well-pleaded facts are taken as true. All inferences drawn from them are drawn in favor of Settlers'.

Settlers' is a non-profit organization under Illinois law that seeks to provide low-cost housing to refugees with resident alien status in the United States. Settlers' was originally organized in 1992 by KJ Lodico ("KJ") and Joe Lodico ("Joe"), who were married at the time. Settlers' acquired its properties through grants provided directly or indirectly through the Department for Housing and Urban Development ("HUD"). Debtor's mission included acclimating recently arrived immigrants to American life, including provision to its residents of training in how to own and care for property. Many of the properties originally acquired from HUD were rented to and eventually sold to the residents, with proceeds from the sales funding further work by Settlers'. By July of 2008, KJ and Joe Lodico were no longer married, and KJ had replaced Joe as Settlers's executive director.

In July, 2008, Settlers' owned five properties in DuPage County and a thirteen-unit property in Oak Park ("the Washington Taylor Property"). In July, 2008, Setters' acquired additional properties ("the Faulkner Properties") through the Bank of Commerce in exchange for assuming a $3.4 million loan. Allegedly, the loans to Jan Faulkner secured by the Faulkner Properties were delinquent, and Bank of Commerce was at risk of being closed by the its banking regulators as a result of its portfolio of delinquent loans. It is further alleged that the Bank of Commerce could not avoid being closed by the banking authorities if it agreed to a short sale of the Faulkner Properties because a short sale to an outside party would have forced the bank to recognize the

loss. The only way to avoid closure by the regulatory authorities was by a transaction wherein some buyer would assume Faulkner's debt, such as the sale that eventually took place to Settlers'. Robert Markay ("Markay") and John Frale ("Frale"), two officers of Bank of Commerce, hired Joe Lodico (the same Joe Lodico who was formerly married to KJ, and formerly the executive director of Settlers') to arrange sale of the Faulkner Properties to Settlers' in exchange for an assumption of the loans, by having Joe show to Settlers' allegedly stale appraisals that overstated value of the properties. Those appraisals shown to Settlers' reflected a valuation of the Faulkner Properties of approximately $4.3 million. The Bank of Commerce offered to transfer the properties to Settlers in exchange for Settlers' assuming approximately $3.4 million in debt.

The closing for the sale to Settlers' of the Faulkner Properties was held on August 1, 2008 in a Bank of Commerce's office, when KJ had only a few hours between her flight from California and her flight leaving the country. Pressed for time, KJ claims that she only reviewed the closing documents for one of the properties and signed the rest based on an oral representation at the time from Connie Saiger ("Saiger") that the remaining documents were the same, except that they covered the other properties included in the transaction. Unbeknownst to KJ (she says), one of the documents in the stack was not the same as the others, but was a line of credit mortgage which cross-collateralized the Washington–Taylor Property and the Faulkner properties.

Two months later, in October of 2008 when the second installment of 2007 real estate taxes came due, Settlers' lacked enough funds to pay those taxes, so KJ called the Bank of Commerce to arrange a loan. KJ was then told that Settlers' already had a line of credit which it could draw on—the one Settlers' now alleges had been surreptitiously slipped among the earlier closing documents. Settlers' drew upon that line of credit, thereby cross-collateralizing the Faulkner Properties and the Washington–Taylor Property. As a result, forty-nine rental units now owned by Setters' are encumbered by

mortgages that were executed in favor of the Bank of Commerce ("the Bank of Commerce Properties").

This result is alleged to have been planned by officers of the Bank of Commerce. The Bank of Commerce assertedly sold the underwater Faulkner Properties to Settlers' for an assumption of debt knowing in advance that the properties would fail to generate enough cashflow to cover expenses such as real estate taxes. Once the taxes came due, Settlers' would need a loan to cover that expense, which would then be extended under the line of credit slipped into the closing documents. Drawing on that line of credit would then bring about of cross-collateralizing of most of Settlers' properties, thus giving the Bank of Commerce valuable collateral.

In 2011, Schaumburg Bank acquired assets of the Bank of Commerce through a receivership of the Federal Deposit Insurance Company ("FDIC"). In 2012, the Bank of Schaumburg foreclosed on the Setters' properties. In the state court foreclosure proceedings, Stephen H. Baer was named receiver for the properties. Debtor filed an answer together with counterclaims and third-party claims against individuals associated with Bank of Commerce, asserting an allegedly fraudulent scheme whereby Bank of Commerce sold Debtor the Faulkner properties and obtained a mortgage on the Washington–Taylor Property.

Further details of the pleadings appear in the discussion below.

## ANALYSIS

### I. JURISDICTION & VENUE

Jurisdiction lies under 28 U.S.C. §§ 157(b)(2)(C), (G) and (K) 4 and 1334. Venue is proper in this District under 28 U.S.C. § 1409. The case is referred here by Internal Procedure 15(a) of the District Court for the Northern District of Illinois.

Since some Adversary Proceeding counts are counterclaims by the estate, the statute provides that they are core, § 157(b)(2)(C), but Article III of the Constitution may

5

not always allow entry of final judgment by a bankruptcy judge. *Stern v. Marhsall*, 131 S.Ct. 2594, 2618 (2011). Recently, a Seventh Circuit panel ruled that the bankruptcy has no statutory authority to do anything in those cases. *Wellness Intern. Network, Ltd. v. Sharif*, 727 F.3d 751, 772 (7th Cir. 2013). However, in *Executive Benefits Insurance Agency v. Arkison*, the Supreme Court reversed that ruling in *Wellness*. The Supreme Court case held that when a matter is core, but there is no Constitutional authority for a bankruptcy judge to enter final judgment (calling such matters "Stern claims "), that matter may be treated as non-core related matters within the meaning of § 157(c). *Executive Benefits Ins. Agency v. Arkison*, 134 S.Ct. 2165, 2172 (2014).

In this proceeding, the counts asserting counterclaims to the Bank's claim are statutorily core under § 157(b)(2)(C), but under *Steren*, the statute cannot Constitutionally authorize entry of a final judgment. However, under *Executive Benefits*, they are "related to" the bankruptcy case because they seek to bring property into the estate for distribution to creditors. *Id.* at 2174. Therefore, even though a bankruptcy judge may not enter a final judgment the bankruptcy judge may "hear" such a proceeding under § 157(c)(1) and has authority to enter an order denying a motion to dismiss because when a trial court "denies a motion under Rule 12(b)(6), it does not enter a judgment." *Goetz v. Cappelen*, 946 F.2d 511, 514 (7th Cir. 1991).

An order of dismissal may be a final ruling, even if entered without prejudice when there is "no amendment a plaintiff could possibly be expected to offer to save the complaint." E.g. *Luevano v. Wal–Mart Stores, Inc.*, 722 F.3d 1014 (7th Cir. 2013). Rule 54(b), F.R. Civ. P. [as made applicable under Rule 7054(a) F.R. Bankr.P.] provides that a court may direct entry of final ruling as to fewer than all claims when there is no just reason for delay. "Otherwise, any order or other decision, however designated, that adjudicates fewer than all the claims or rights and liabilities of fewer than all the parties" is not a final judgment. Rule 54(b). Here, since only some counts will be

dismissed, there is no final ruling unless the court expressly determines that there is no just reason for delay entry of judgment. Such determination is not made here.

## II. SUFFICIENCY OF THE PLEADINGS

A motion to dismiss under Rule 12(b)(6) tests the sufficiency of the Complaint rather than the merits of the case. Rule 7012 F.R. Bankr. P.; *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). "The consideration of a 12(b)(6) motion is restricted solely to the pleadings, which consist generally of the complaint, any exhibits attached thereto, and supporting briefs." *Thompson v. Illinois Dep't of Prof'l Regulation*, 300 F.3d 750, 753 (7th Cir. 2002); Rule 10(c) F.R.C.P.; Rule 7010 F.R. Bankr. P. All well-pleaded allegations of the complaint are assumed true and read in the light most favorable to the plaintiff. *United Indep. Flight Officers, Inc. v. United Air Lines, Inc.*, 756 F.2d 1262, 1264 (7th Cir. 1985). If the complaint contains allegations from which a trier of fact may reasonably infer evidence as to necessary elements of proof available for trial, dismissal is improper. *Sidney S. Arst Co. v. Pipefitters Welfare Educ. Fund*, 25 F.3d 417, 421 (7th Cir. 1994).

Rule 8(a)(2) F.R.C.P. [Rule 7008 Fed. R. Bankr. P.] generally requires that the pleader provide "a short and plain statement of the claim showing that the plaintiff is entitled to relief," giving the defendant "fair notice of what the ... claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint need not contain detailed factual allegations, but "the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 1964–65 (internal quotations omitted). Factual allegations must show that the right to relief is more than speculative and "state a claim to relief that is plausible on its face." *Id.* at 1965, 1974.

While most pleadings are bound by the Rule 8 standards, allegations of fraud must properly be pleaded in conformance to Rule 9(b) F.R.C.P. [Rule 7009 Fed. R. Bankr. P.]. *Borsellino v. Goldman Sachs Group, Inc.*, 477 F.3d 502, 507 (7th Cir.2007).

7

Under Rule 9(b), in "averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." *Id.* "This means the who, what, when, where, and how...." *DiLeo v. Ernst & Young*, 901 F.2d 624, 626 (7th Cir. 1990). This requirement insures that defendants have fair notice of plaintiffs' claims and grounds, providing defendants an opportunity to frame their answers and defenses. *Reshal Assocs., Inc. v. Long Grove Trading Co.*, 754 F.Supp. 1226, 1230 (N.D.Ill. 1990). This heightened pleading standard applies to all averments of fraud, regardless of whether those averments pertain to a cause of action for fraud. *Borsellino*, 477 F.3d at 507. Allegations based on information and belief do not comply with the specificity requirement unless accompanied by a statement of fact providing the basis of the belief. *Interlease Aviation Investors II v. Vanguard Airlines, Inc.*, 254 F. Supp. 2d 1028, 1040 (N.D. Ill. 2003).

It is also possible for a plaintiff to plead itself out of court. Although a trial court judge should not usually base dismissal under Rule 12(b)(6) on its assessment of an affirmative defense that may be shown by a complaint or counterclaim, it may be appropriate to do so when a party has included in its complaint facts that establish an impenetrable defense to its claims. *Hecker v. Deere & Co.*, 556 F.3d 575, 588 (7th Cir.2009) (citations omitted). In this case, Settlers' pleaded that the Bank of Schaumburg is the successor in interest to the FDIC which had succeeded to assets of the Bank of Commerce as receiver after the Bank of Commerce was closed by the state authorities. (Complaint ¶¶ 7–8.) This is relevant to the defense under the *D'Oench, Duhme* doctrine as discussed below.

### III. FRAUD IN THE EXECUTION, CONSPIRACY TO DEFRAUD, AND CIVIL CONSPIRACY INVOLVING KPW AND PETERSON – COUNT 10

The doctrine of fraud in the execution was addressed in the Memorandum Opinion entered on July 1, 2014 on Schaumburg Bank's Motion to Dismiss. *In re Settlers' Housing Service, Inc.*, 514 B.R. 258, 274 (Bankr. N.D. Ill. 2014). That opinion ruled that the

8

Second Amended Complaint sufficiently alleged fraud in the execution, and the Bank's argument here that Counts 3, 4, 5, 6, and 7 should be dismissed makes the same arguments as did the original motion of Defendant to dismiss, and lacks merit for the same reasons. Whether KJ had a reasonable opportunity to read the documents and related disputes are questions of fact, not an issue over the sufficiency of the pleadings. Those questions must be decided by evidence.

Additionally, it was previously held that Settlers' conspiracy claim regarding KPW and Peterson was well pleaded, and survives a motion to dismiss. 514 B.R. at 281. In the previous motion to dismiss, the Bank also argued that Peterson was an agent of the Bank of Commerce. Under Illinois law, a principal cannot conspire with an agent "because the agents of an agent are considered in law to be the acts of the principal." *Alpha School Bus Co., Inc. v. Wagner*, 391 Ill. App. 3d. 722, 738 (1st Dist. 2009). Still, there are exceptions to this rule when "the interests of a separately incorporated agent diverge from the interests of the corporate principal," or where "the agent is acting not as an agent but as a principal." *Id.* A corporate director is an agent of a corporation. *Gosch v. State Mut. Fire Ins. Ass'n*, 44 Ill. App. 263, 268 (1st Dist. 1892). However, Peterson was not acting as a principal on his own behalf because as director of the Bank of Commerce, Peterson had no legitimate means of knowing details of Settlers' financials. It was only in his capacity as Settlers' accountant that he was alleged to have had that knowledge. Accordingly the Count for civil conspiracy was not dismissed in the prior opinion, and Count 10 now in issue will not be dismissed.

### IV. FRAUDULENT CONCEALMENT RELATED TO FRAUD IN THE EXECUTION AND CONSTRUCTIVE FRAUD RELATING TO FRAUD IN THE EXECUTION – COUNTS 4 & 7

Counts 4 & 7 should be dismissed because Settlers' cannot allege a fiduciary duty. Settlers' alleges that the Bank fraudulently concealed material facts it had a duty to disclose in the execution of the mortgages on the Faulkner properties. (Complaint ¶¶ 249-254). However, the claim is deficient because Settlers' cannot plead a fiduciary

duty between Settlers' and the Bank of Commerce that would give rise to such a duty to disclose.

Illinois law requires that a complaint for fraudulent concealment include allegation of a duty to disclose material facts, *Connick v. Suzuki Motor Co.*, 174 Ill. 2d 482, 501 (1996), and Settlers' cannot allege that duty. A duty to disclose can arise either from a fiduciary relationship, or from a scenario "where plaintiff places trust and confidence in defendant, thereby placing defendant in a position of influence and superiority over plaintiff." *Id. at 500.*

The *D'Oench, Duhme* doctrine and § 1823(e) of Title 12 protects the FDIC and its successors from unwritten agreements or obligations tied to bank assets. *See D'Oench, Duhme & Co. v. FDIC*, 315 U.S. 447 (1942) and its progeny, as discussed further in the prior opinion, 514 B.R. at 270. An asserted fiduciary duty is a kind of implied agreement or obligation that *D'Oench* and § 1823(e) preclude. What a borrower would have to prove to establish a fiduciary duty shows why that is so: A borrower would have to plead the existence of a fiduciary duty arising out of the transaction at issue, such as a special trust and confidence in the Bank. To plead the existence of a fiduciary duty by a bank, the borrower must show that the bank agreed to undertake that special trust and confidence. *DeWitt Cnty. Pub. Bldg. Comm'n v. DeWitt Cnty.*, 128 Ill. App. 3d 11, 26 94th Dist. 1984). An agreement by a bank to take care of a customer because of some special relationship is exactly the sort of scheme or arrangement *D'Oench* and § 1823(e) were meant to preclude. *See Langley v. FDIC*, 484 U.S. 86, 92 (1987). Thus, *D'Oench* and § 1823(e) preclude Settlers' from relying on an alleged fiduciary duty, Count 4 must therefore be dismissed.

Additionally, Settlers' constructive fraud claim cannot survive because in Illinois, constructive fraud requires a showing that defendant owed claimant a fiduciary duty. *LaSalle Nat. Trust, N.A. v. Bd. of Directors of the 1100 Lake Shore Drive Condo.*, 287 Ill. App. 3d 449, 455 (1st Dist. 1997); *see also In re Gerard*, 132 Ill. 2d 507, 529 (1989). Settlers'

10

cannot establish a fiduciary relationship with the Bank for the same reasons that fraudulent concealment cannot be established, and thus the constructive fraud claim in Count 7 must be dismissed.

## V. BREACH OF ILLINOIS CONSUMER FRAUD ACT ARISING FROM FRAUD IN THE EXECUTION – COUNT 5

Count 5 is not barred under the applicable statute of limitations because the savings provision in 735 ILCS 5/13-207 extended the time for Settlers' to counterclaim. 815 ILCS §505/10a(e) provides for a three-year statute of limitations for fraud actions under the Illinois Consumer Fraud Act. That limitations period begins when a plaintiff discovers the injury. *Ogilvie v. Beal*, 1994 WL33972, 9 (N.D. Ill. Feb. 4, 1994) (the time of accrual of a cause of action is when the plaintiff discovers the injury).

The Bank's consolidated foreclosure action against the Faulkner properties was filed February 3, 2012 (2012-CH-03839) within the three year statute of limitations under the Consumer Fraud Act.

The savings provision in § 13-207 extended the statute of limitations. 735 ILCS 5/13-207 provides:

> A defendant may plead a set-off or counterclaim barred by the statute of limitation, while held and owned by him or her, to any action, the cause of which was owned by the plaintiff or person under whom he or she claims, before such set-off or counterclaim was so barred, and not otherwise. This section shall not affect the right of a bona fide assignee of a negotiable instrument assigned before due.

In *Barragan v. Casco Design Corp.*, the Illinois Supreme Court determined that § 2/13-207 should be read to save the statute of limitations from running if the claim that would otherwise be barred is in response to a claim owned by the adverse party. 216 Ill.2d 435, 441-442 (2005). The savings provision therefore applies and extends the statute of limitations beyond the bankruptcy filing date.

11

Because the Bank filed its foreclosure case on February 3, 2012, within the three-year statute of limitations, the savings provision protected Settlers' from being barred from making a counterclaim to the Bank's foreclosure action, as it could have asserted the claim when the foreclosure action was filed. Once a bankruptcy case is filed, 11 U.S.C. 108(a) preserves the timeliness of viable claims on the Petition Date for two years. This adversary proceeding was commenced within that two-year period, and is therefore timely.

The Bank argues that the savings provision does not extend the statute of limitations to save Count 5 because one clause in § 13-207 assertedly renders the provision inapplicable in this case: "This section shall not affect the right of a bona fide assignee of a negotiable instrument assigned before due." (735 ILCS § 2/13-207). However, the Bank's argument is conclusory.

Under Illinois state law, a bona fide assignee is a synonym for bona fide purchaser. *Charles v. Remick*, 156 Ill. 327 (1895). A bona fide purchaser "of an interest in property takes that interest free and clear from all claims except those of which he has notice." *Daniels v. Anderson*, 252 Ill. App. 3d 289, 296 (1993).[1] But by definition, a purchaser is not a bona fide purchaser if there was notice to the purchaser, actual or constructive. *LaSalle Nat'l Bank v. 850 De Witt Condominium Ass'n*, 211 Ill. App. 3d 712 (1st Dist. 1991); *See Charles v. Remick*, 156 Ill. at 330. The statute provides that a bona fide assignee's rights are not affected. They are not, because while the savings clause preserves Settlers' counterclaim from being barred by the statute of limitations, it does not prevent the Bank from asserting its rights as a bona fide assignee. If a party is a bona fide assignee, the savings clause does not affect its rights because a bona fide assignee would not be subject to the counterclaim at all.

---

[1] The Bank has not in this motion raised its status as a bona fide purchaser as a defense to the substance of Settlers' complaint. It did mention the federal holder in due course doctrine in its prior motion to dismiss, but did not elaborate on what protections federal holder in due course status gives it that *D'Oench* and § 1823(e) do not.

## VI. FRAUD, ILLEGALITY AND UNENFORCEABILITY REGARDING THE WASHINGTON-TAYLOR MORTGAGE – COUNT 6

Settlers' claim in Count 6 is adequately pleaded because property held by a charitable organization purchased using federal grant money is held in trust. Settlers' alleges that the Washington-Taylor Property was purchased with grant money provided through the Community Block Grant Development program. (Complaint ¶ 277.) Relevant regulations on Community Block Grant Development funds provide that "[r]eal property, equipment, intangible property and debt instruments that are acquired or improved with Federal shall be held in trust by the recipient as trustee for the beneficiaries of the project or program under which the property was acquired or improved." 24 C.F.R. § 84.37. Accordingly, Settlers' has plausibly alleged that the funds were held in trust.

The Bank does not argue that the complaint fails plausibly to allege a trust, but it declares in a footnote that, "The Bank does not concede that the property was being held in trust nor does it waive its previous argument of why the property was not being held in trust." (Reply Brief, Dkt. 78, at 12.) Settlers' includes in the Third Amended Complaint detailed allegations about how federal funds for the HOME Investment Partnership Act were administered by the Illinois Housing and Development Association, and how those funds were used by Settlers' to purchase the Washington-Taylor Property, which would then be held in trust. (Complaint ¶¶ 268-276.) The prior opinion provided Settlers' leave to amend to allege plausibly the existence of a trust. Settlers' has done so. Because Count 6 plausibly alleges a trust, it will not be dismissed.

However, Settlers' has failed to allege plausibly that the mortgage was void for illegality. The Illinois Supreme Court has held that, unless "the instrument arising from a contract or transaction is, itself, made void by statute," voidness for illegality will not apply. *Kedzie and 103rd Currency Exch., Inc. v. Hodge*, 156 Ill.2d 112 (1993). Settlers' has

not pointed to any such statute, and therefore has not raise its defense of voidness for illegality beyond a speculative level.

## VII. CONVERSION AND ACCOUNTING – COUNT 13

Settlers' alleges in Count 13 that letters sent to Settlers' tenants by the Bank of Schaumburg instructing tenants to pay rents to the Bank instead of Settlers' amounted to conversion. In support of its conversion claim, Settlers' also prayed for an order directing that the Bank provide an accounting.

Count 13 should be dismissed because Settlers' has failed to plead a cause of action for conversion even though (as the prior opinion concluded) the Bank then had no legal right to the rents because Settlers' failed to allege a demand for return of rents, or in the alternative the futility of such a demand. 514 B.R. at 284. Though Settlers' was given leave to amend this count, the prior opinion was clear on the requirements for pleading demand or futility. Settlers' has not sufficiently pleaded demand or futility in its Third Amended Complaint, and therefore has not met those requirements.

Settlers' attempts to avoid the demand requirement because it argues there was an independent act of conversion. Under Illinois state law, "a demand is unnecessary to establish a conversion where another independent action of conversion is established." *Pavilon v. Kaferly*, 204 Ill. App. 3d 235, 248 (1st Dist. 1990). In *Pavilon*, an independent act of conversion was found when the defendant sold a desk in addition to refusing to return it. *Id*. Here, the only act of conversion alleged was taking possession of rents. (Complaint ¶ 334.) Settlers' did not allege that the Bank committed a second, independent act of conversion, so Settlers' cannot avoid the demand requirement.

Nor has Settlers' adequately pleaded that it made a demand on the Bank. The letter sent from Settlers' to the Bank cannot plausibly be read to constitute a demand. (Complaint Exh. 10). The language that Settlers' claims constituted a demand reads as follows, "Settlers' is willing to turn over all February rents from the purchased properties less $16,000.00. Settlers' will need to pay certain outstanding bills including a

14

water bill, an association bill and payments to its auditors." Those two sentences did not constitute a demand.

Settlers' also attempted to allege the futility of a demand. (Complaint ¶¶ 339, 340). Illinois law instructs that a plaintiff must plead facts, not conclusions, when alleging that a demand is excused due to futility. *Borgsmiller v. Burroughs*, 187 Ill. App. 3d 1, 8 (5th Dist. 1989). The Seventh Circuit has similarly interpreted Illinois law, and held that, However, it is not sufficient simply to state in conclusory terms that no demand was made because it would have been futile. *In re Abbott Labs. Derivative Shareholders Litig.*, 325 F.3d 795, 804 (7th Cir. 2003) (citation omitted). Settlers' pleading lacks non-conclusory factual allegations excusing a demand.

Nor is Settlers' entitled to an accounting in connection with its claim for conversion. In the prayer for relief, Settlers' prays that the Court "direct Defendant to account for all rents that it received from tenants of the buildings." (¶ 342.) Accounting in relation to conversion is a vestige of the separation of law and equity. "An accounting for rents and profits by parties alleged to be in wrongful possession will not give equity jurisdiction where such accounting can be had in a proper action at law." *Burr v. State Bank of St. Charles*, 344 Ill. App. 332, 338 (Ill. App. Ct. 1951) Where discovery is available at law, the remedy at law is adequate, and an accounting is not available in equity. *Hornbeek v. Hornbeek*, 5 Ill. App. 2d 253, 260 (3d Dist. 1955). A cause of action for accounting may still available at equity for breaches of fiduciary duty, *see Couri v. Couri*, 95 Ill. 2d 91, 97 (1983), but the accounting remedy here is sought only in relation to the rents allegedly converted by the Bank. No conversion is properly pleaded, so accounting is not a remedy for anything.

For the foregoing reasons, the attempt in Count 13 to plead conversion will be dismissed.

## VIII. DEFENSE TO CLAIM AS BEING INFLATED WITH IMPROPER AMOUNTS – COUNT 14

Count 14 is Settlers' objection to the Bank's proof of claim, not a counterclaim. Settlers' had previously been ordered to file all of its counterclaims and objections in the form of an adversary complaint. Settlers' alleges here that the state court appointed receiver charged improperly high fees, and the Bank's proof of claim includes interest that accrued between the date of filing Settlers' bankruptcy petition and the date of the Bank's proof of claim.

Count 14 should be dismissed. First, Settlers' waived its right to challenge the receiver's compensation in state court proceedings, and it cannot now attack those fees. The Seventh Circuit defines waiver as, "[a] voluntary and intentional relinquishment or abandonment of a known existing right or privilege, which, except for such waiver, would have been enjoyed."*Buffum v. Chase Nat. Bank of City of New York*, 192 F.2d 58, 60-61 (7th Cir. 1951). In its Complaint, Settlers' alleges that the receiver filed from 6 to 7 reports in each of the 9 foreclosure cases, all of which were noticed and presented. (¶¶ 352-353). However, Settlers' does not allege any objection to the reports, or to the receiver's fees. Settlers' failed to oppose the fees when they were properly before the state court, and by making no objection then, Settlers' cannot now raise the matter now. Because Settlers' waived challenge to the receiver's compensation in Illinois state court proceedings, that waiver should act to bar Settlers' from challenging that compensation in bankruptcy.

Second, Count 14 also alleges that the Bank's claim includes post-bankruptcy interest on the mortgage claim. Unmatured interest is generally not allowed after the filing of a bankruptcy petition. 11 U.S.C. § 502(b)(2), but oversecured creditors may still be entitled to interest. *See United Sav. Ass'n of Tex. V. Timbers of Inwood Forest Assocs.*, 484 U.S. 365, 372-73 (1988). Originally, the Bank filed a proof of claim including interest to October 10, 2013. (Claim 12-2 Part 2.) In the Bank's most recent amended proof of claim, it alleges that it is secured for $2,721,000 and unsecured for $2,200,425.97 of its claim.

16

(Claim 12-3.) Attached to the proof of claim is a ledger showing the principal, interest, and expenses as of July 12, 2013, the date of the petition. Thus, the Bank no longer has a claim for post-bankruptcy interest, and the objection to post-petition interest is moot.

Accordingly, Count 14 will be dismissed.

### IX. THE MOTION TO STRIKE COUNTS 2 & 12

Motions to Strike portions of pleadings are disfavored. *See Custom Vehicles, Inc. v. Forest River, Inc.*, 464 F.3d 725 (7th Cir.2006) (Easterbrook, J., in chambers). In *Custom Vehicles*, Judge Easterbrook, serving as the motions judge, denied a motion to strike portions of an appellate brief and, as a sanction, deducted twice the length of the motion to strike "from the permissible length of the offending party's reply brief." *Id.* at 726. Even though motions to strike might sometimes be proper, "there is no provision for a judicial blue pencil." *Id.* at 727.

As for the paragraphs of the complaint enumerated in Addendum A, the motion to strike will be denied. Some of the allegations at least arguably relate to how fraud in the execution was carried out, and therefore are not extraneous. As for the other complained of paragraphs, if evidence related thereto turn out not to be legally admissible, objections thereto may be sustained. Any such objection is reserved for trial.

As for Counts 2 and 12, the motion to strike will be treated as a motion to dismiss under Rule 12(b)(6), F.R.C.P., Rule 7012 F.R. Bankr. P.; *see In re Doppelt*, 57 B.R. 124, 127 (Bankr. N.D. Ill. 1986) (recognizing that when motion to strike attacks the sufficiency of the complaint, it may treated as a motion to dismiss).

Settlers' pleaded Count 2 for aiding and abetting Peterson and KPW's breach of fiduciary duty in connection with fraud in the execution. As the previous opinion explained, "Even though Settlers' may have alleged how Peterson aided and abetted the Bank of Commerce, it does not allege how the Bank of Commerce aided and abetted Peterson." 514 B.R. at 279. Further, "Settlers' has not alleged that the Bank assisted KPW or Peterson in any alleged breach of a fiduciary duty by surreptitiously slipping in the

17

Washington–Taylor Mortgage for signature." *Id*. In the Third Amended Complaint, Settlers' alleges the same conduct as the Second Amended Complaint, but added that "It is thus plausible that The Bank of Commerce encouraged KPW and Peterson to breach their fiduciary duty to Settlers'." (Complaint ¶ 227.)

As explained in the prior opinion, aiding and abetting requires that the defendant "knowingly and substantially assist the principal violation." *Id*. (quoting *Thornwood, Inc. v. Jenner & Block*, 344 Ill. App. 3d 15, 27–28, (Ill.App.Ct.2003).). "Encouragement" is far short of "substantially assist." The difference in treatment in the prior opinion of the count for conspiracy and the count for aiding and abetting is instructive. Civil conspiracy merely requires a "combination" and "concerted action." 514 B.R. at 280. Mere "encouragement" is enough for civil conspiracy. *Id*. It does not suffice for aiding and abetting.

While the prior opinion left enough room for Settlers' to allege another count for aiding and abetting if it was related to the fraud in the execution, the Third Amended Complaint has not done so. Count 2 will therefore be dismissed with prejudice.

Count 12 pleads a breach of fiduciary duty "arising from fraud in execution." In the prior opinion, breach of fiduciary duty on the part of the Bank of Commerce was dismissed without leave to amend. As discussed in the prior opinion, a fiduciary relationship is the type of obligation that is barred by *D'Oench* and § 1823(e). 514 B.R. at 277. The reasoning has been further elaborated above at Part IV. Settlers' has pleaded a plausible claim for fraud in the execution without any need to show breach of fiduciary duty on the part of the Bank of Commerce, but in any case, Settlers' cannot plead a breach of fiduciary duty. Any further repleading would be futile, so dismissal of Count 12 will be with prejudice.

## X. REPEATING ARGUMENTS PREVIOUSLY REJECTED

Section 1927 of Title 28 provides,

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

The bankruptcy court is a unit of the district court, and bankruptcy judges are judicial officers of the district court. 28 U.S.C. § 151. The District Court is clearly a "court of the United States." The Seventh Circuit has previously held under 11 U.S.C. § 105(a), that bankruptcy judges may impose sanctions under § 1927. *Matter of Volpert*, 110 F.3d 494, 500 (7th Cir. 1997). Making a motion to dismiss a later version of a claim previously ruled permissible may well fulfill the requirements of § 1927. *Siderpali, S.P.A. v. Judal Indus., Inc.*, 833 F. Supp. 1023, 1028-29 (S.D.N.Y. 1993). As in the present case, defendants in *Siderpali* repeated a motion to dismiss a fraud count in an amended complaint after previously losing the same motion. *Id.*

Further, Rule 9011, F.R. Bankr. P., provides that by signing a filing, an attorney certifies to the court that it "is not being presented for any improper purpose, such as to … cause unnecessary delay or needless increase in the cost of litigation." Rule 9011(b)(1). Sanctions may be imposed under Rule 9011(c).

The Bank's present motion to dismiss Counts 3, 5, and 10 for fraud in the execution and civil conspiracy only rehash old arguments previously rejected, and might arguably be viewed as unreasonable and vexatious. Likewise, Settlers' repleading causes of action for aiding and abetting and for breach of fiduciary duty rehash arguments previously rejected. Counsel for both sides have thereby opened themselves to possible motions for sanctions under § 1927 or Rule 9011(c), though this comment is

intended as a warning for the future, not an invitation for cross-motions seeking such sanctions.

## CONCLUSION

For the foregoing reasons, the Bank's motion to dismiss and motion to strike will be granted in part and denied in part. Count 2 for Aiding and Abetting, Count 4 for fraudulent concealment, Count 7 for constructive fraud, Count 12 for breach of fiduciary duty, Count 13 for conversion and accounting, and Count 14 for improper amounts will all be dismissed by separate order. For those counts, no leave to amend will be given as amendment would be futile.

There is no certification that there is no just reason for delay of final ruling under Rule 54(b) F.R.C.P., Rule 7054 F.R. Bankr. P. Accordingly, dismissal will only become a final and appealable order when all claims for relief presented in this adversary proceeding have been resolved. In federal practice, piecemeal litigation is discouraged. *See In re Manhattan Investment Fund, Ltd.*, 288 B.R. 52, 56 (S.D.N.Y. 2002) (discouraging interlocutory appeals for rulings on the sufficiency of the pleadings). The better course here is to withhold appeals until the whole proceeding has been completed.

All further relief requested will be denied.

ENTER:

Jack B. Schmetterer
United States Bankruptcy Judge

Dated November 18, 2014