United States Bankruptcy Court
Northern District of Illinois
Eastern Division

| | |
|---|---|
| In re:<br><br>Settlers' Housing Service, Inc.,<br><br>                                    Debtor. | Bankruptcy No. 13-bk-28022 |
| Settlers' Housing Service, Inc.,<br><br>                                    Plaintiff<br><br>v.<br><br>Schaumburg Bank & Trust Company, N.A.,<br><br>                                    Defendant. | Chapter 11<br><br>Adversary No. 13-ap-1328 |

## MEMORANDUM OPINION ON SCHAUMBURG BANK'S MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION

This adversary proceeding arises out of and relates to the chapter 11 case of Settlers' Housing Service, Inc. ("Settlers" or "Debtor"). Before the court for ruling is the motion of Schaumburg Bank & Trust Company, N.A. ("Schaumburg Bank" or "Defendant") to dismiss Debtor's Third Amended Complaint for Equitable Subordination and Other Relief and Objection to Claims 11 & 12 (the "Third Amended Complaint") for lack of subject matter jurisdiction pursuant to Rule 12(b)(1), Fed. R. Civ. P. 12(b)(1) (made applicable by Fed. R. Bankr. P. 7012).

For reasons stated below, Schaumburg Bank's motion to dismiss for lack of subject matter jurisdiction will be granted in part and denied in part by separate order.

## I. BACKGROUND

Settlers is an Illinois nonprofit corporation dedicated to fulfilling the housing needs of recently arrived legal immigrants. Settlers filed a petition for relief under chapter 11 of the Bankruptcy Code, 11 U.S.C. §§ 101 *et al.*, on July 12, 2013. Defendant Schaumburg Bank filed a proof of claim in the Debtor's bankruptcy case for a total amount of $4,921,425.97. *See* Claim 12-3.[1] Schaumburg Bank's claim is secured by mortgages on a number of properties owned by the Debtor. However, because the total value of the properties

---

[1] Although Schaumburg Bank initially filed two separate proofs of claim, claims 11 and 12, claim 12 has since been amended to supersede both claim 11 and the original claim 12.

securing this claim is estimated at $2,721,000.00, Schaumburg Bank's claim is secured with respect to that value and unsecured for the remaining $2,200, 425.97.

Debtor filed this adversary proceeding on November 20, 2013, seeking, in part, to object to and disallow Schaumburg Bank's claim against the estate. Settlers filed its Third Amended Complaint on July 28, 2014. (Dkt. 56.)

Debtor's grounds for objecting to allowance of Schaumburg Bank's claim against the estate concern allegations of fraud and other misconduct by Schaumburg Bank's predecessor in interest, The Bank of Commerce. Schaumburg Bank acquired the assets forming the basis of its claim against the estate pursuant to assignment by the Federal Depository Institution Corporation ("FDIC") as receiver for The Bank of Commerce.

## A. PROCEDURAL HISTORY

The Third Amended Complaint was originally pleaded in fourteen counts, six of which have been dismissed for failure to state a claim upon which relief may be granted. *See* Memorandum Opinion on Bank of Schaumburg Motions to Dismiss and Strike, November 18, 2014, Dkt. 79. A trial was set on the remaining eight counts of the Third Amended Complaint, *see* Final Pretrial Order, November 24, 2014, Dkt. 86, as set forth below (previously dismissed counts are shown as ~~stricken~~):

1. Equitable Subordination under 11 U.S.C. § 510(c)
2. ~~Aiding and Abetting Breach of Fiduciary Duty~~
3. Fraudulent Misrepresentation
4. ~~Fraudulent Concealment~~
5. Breach of Illinois Consumer Credit Act
6. Fraud, Illegality and Unenforceability of Mortgage
7. ~~Constructive Fraud~~
8. Setoff
9. Unjust Enrichment
10. Conspiracy to Defraud and Civil Conspiracy
11. Tortious Interference With Contract
12. ~~Breach of Fiduciary Duty~~

~~13. Conversion and Accounting~~

~~14. Improper Post-Petition Interest and Receiver's Fees~~

Schaumburg Bank's pending motion seeks to dismiss these eight remaining counts for lack of subject matter jurisdiction.[2]

Schaumburg Bank's motion to dismiss argues that this court lacks subject matter jurisdiction over any claims relating to acts or conduct by The Bank of Commerce prior to the FDIC receivership because any such claims are subject to the FDIC's claims procedures. Debtor disputes the contention that its adversary claims are jurisdictionally barred, in part, because the claims at issue could not have been timely brought pursuant to administrative procedures applicable when banking institutions are taken over by the FDIC as receiver.

In considering the pending motion to dismiss the Third Amended Complaint, the court has reviewed and considered the motion itself (Dkt. 104), Defendant's memorandum in support of its motion (Dkt. 105) and the Third Amended Complaint (Dkt. 56.), as well as:

i. Plaintiff's Response to Defendant's Motion to Dismiss Third Amended Complaint for Lack of Subject Matter Jurisdiction (Dkt. 120);

ii. The Reply in Support of Schaumburg Bank & Trust Company, N.A.'s Motion to Dismiss (Dkt. 129);

iii. Plaintiff's Sur-Reply (Dkt. 136);

iv. Schaumburg Bank & Trust Company, N.A.'s Objection and Sur-Reply in Support of its Motion to Dismiss (Dkt. 137);[3]

v. Schaumburg Bank & Trust Company, N.A.'s Brief Regarding the Issue of Notice to Debtor Pursuant to 12 U.S.C. § 1821(d)(3) (Dkt. 153);

---

[2] Defendant's counsel was substituted by new counsel after entry of the Final Pretrial Order. *See* Order Granting Motion for Substitution of Attorneys, February 10, 2015, Adv. Dkt. No. 95.

[3] Defendant Schaumburg Bank initially objected to consideration of Plaintiff's Sur-Reply on the basis that it was filed two days after the deadline set forth in the court's scheduling order. However, upon subsequent motion by Settlers, the scheduling order was modified by this court to allow the parties additional days by which to file sur-replies. *See* Order to Extend Time to File Sur-Reply, July 23, 2015, Dkt. 143. Thus, Plaintiff's Sur-Reply and Defendant's Sur-Reply are deemed timely and may be considered by the court.

    vi. Settlers' Supplemental Brief Regarding FDIC Notice Under 12 U.S.C. § 1821(d)(3) (Dkt. 155); and

    vii. Stipulation Regarding FDIC Notice.

The court has also taken judicial notice of the contents of the docket in this matter. *See In re Brent*, 458 B.R. 444, 455 n.5 (Bankr. N.D. Ill. 2011) (Goldgar, J.) (noting that bankruptcy courts can take judicial notice of matters in its own records).

### B. FACTS ALLEGED IN THE THIRD AMENDED COMPLAINT

The relevant facts summarized below relate to acts or conduct alleged to have taken place both before and after Schaumburg Bank acquired the assets forming the basis of its claim against Settlers' bankruptcy estate.

### 1. Alleged Misconduct by The Bank of Commerce

The Third Amended Complaint alleges a mortgage securing Schaumburg Bank's claim, proof of which was filed in this bankruptcy case, was obtained by The Bank of Commerce without Settlers' knowledge and authorization.

In July of 2008, Settlers owned five properties located in DuPage County, Illinois, and a thirteen-unit property (the "Washington–Taylor Property") in Oak Park, Illinois. Settlers subsequently acquired additional properties (the "Faulkner Properties") in a transaction facilitated by The Bank of Commerce in exchange for assuming a $3.4 million loan owed by another bank customer.

Closing for the sale to Settlers of the Faulkner Properties took place on August 1, 2008 at the Bank of Commerce's offices. Settlers alleges that at the closing of the sale, the Bank of Commerce set a trap by surreptitiously burying documents into a thick stack of closing documents which, without Settlers' knowledge, authorized a line of credit which was secured by the Washington–Taylor Property and cross-collateralized the Faulkner Properties and the Washington–Taylor Property.

4

Settlers' executive director KJ Lodico signed all documents at the closing and was unaware that the sale was to involve the line of credit and the grant of an interest in the Washington–Taylor Property.

Later that year, between October and November of 2008, a second installment for 2007 real estate taxes for the Faulkner Properties became due and Settlers lacked enough money to make the payment. KJ Lodico called The Bank of Commerce to arrange a loan to make these payments. At that point, KJ Lodico was informed that Settlers already had a line of credit it could draw upon. Although KJ Lodico learned at this point that a line of credit had been previously authorized, Settlers alleges that she still did not know that this line of credit was secured by the Washington–Taylor Property or that the loans would be cross-collateralized.

Settlers claims that it did not learn about the mortgage on the Washington–Taylor Property until January of 2009, approximately five months after the closing on the sale of the Faulkner Properties took place.

According to the complaint, The Bank of Commerce facilitated sale of the Faulkner Properties to Settlers in an attempt to limit its exposure to loses resulting from loans secured by property that had lost substantial value during the months leading up to the sale. The Bank of Commerce allegedly needed additional collateral to help it fend off the risk of being shut down by banking regulators.

The Bank of Commerce was eventually closed in March of 2011 by the Illinois Department of Financial and Professional Regulation and the FDIC was appointed as receiver. Schaumburg Bank acquired the defunct bank's assets shortly thereafter pursuant to assignment by the FDIC as receiver.

## 2. Post-Receivership Events Involving Schaumburg Bank

Following assignment of assets to Defendant by the FDIC, Settlers sent Defendant a letter dated June 1, 2011 where it related allegations of misconduct by The Bank of Commerce and individuals associated with the bank, including the alleged misconduct in connection with the sale of the Faulkner Properties.

In January 2012, Schaumburg Bank sent letters to Settlers' tenants at the Faulkner Properties and the Washington–Taylor Property directing them not to pay rent to Settlers but to make payments directly to Schaumburg Bank instead. At the time, Settlers remained in possession of the properties.

Schaumburg Bank filed foreclosure actions against the Faulkner Properties and the Washington–Taylor Property sometime thereafter and the state court appointed a receiver for the properties. These foreclosure actions were still pending when Settlers filed its petition for bankruptcy relief in July of 2013.

## II. DISCUSSION

Schaumburg Bank's motion will be granted with respect to Counts 5 and 10, and denied with respect to the remaining seven counts (Counts 1, 3, 6, 8, 9, and 11); Defendant's motion to dismiss will be denied with respect to these seven counts for one of two reasons. First, Counts 1, 3, 6 and 9 for relief based on acts by The Bank of Commerce before the FDIC took over the bank's assets as receiver are not jurisdictionally barred to the extent they are raised defensively to object to Schaumburg Bank's proof of claim. Second, jurisdiction is proper with respect to Counts 8 and 11 for relief based on post-receivership conduct by the Defendant directly.

### A. JURISDICTION & APPLICABLE STANDARDS

Subject matter jurisdiction generally lies under 28 U.S.C. § 1334. The district court may refer bankruptcy proceedings to a bankruptcy judge under 28 U.S.C. § 157, and this proceeding is thereby referred here by District Court Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois. Venue lies under 28 U.S.C. § 1409.

A motion to dismiss under Rule 12(b)(1) challenges the court's subject matter jurisdiction. A federal court has the authority to determine whether it has jurisdiction to hear a particular case. *United States v. Ruiz*, 536 U.S. 622, 628 (2002). "The objection that a federal court lacks subject-matter jurisdiction may be raised by a party, or by a court on its own initiative, at any stage in the litigation, even after trial and the entry of judgment."

*Arbaugh v. Y & H Corp.*, 546 U.S. 500, 506 (2006). Pursuant to Federal Rule of Civil Procedure 12(h)(3), "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3) (made applicable by Fed. R. Bankr. P. 7012).

In ruling on Schaumburg Bank's motion to dismiss for lack of subject matter jurisdiction, the court must accept all well-pleaded facts in the complaint as true and draw all reasonable inferences in Settlers' favor. *See Miller v. F.D.I.C.*, 738 F.3d 836, 840 (7th Cir. 2013); *St. John's United Church of Christ v. City of Chicago*, 502 F.3d 616, 625 (7th Cir. 2007). The court may also "properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Miller*, 738 F.3d at 840 (quotation marks and citation omitted).

## B. FIRREA'S ADMINISTRATIVE CLAIMS PROCEDURE

The Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA"), Pub. L. No. 101–73, 103 Stat. 183, limits judicial review of claims against the FDIC and its successors. The statutory provision limiting court jurisdiction to review these claims provides:

> Except as otherwise provided in this subsection, no court shall have jurisdiction over-
> (i) any claim or action for payment from, or any action seeking a determination of rights with respect to, the assets of any depository institution for which the Corporation has been appointed receiver, including assets which the Corporation may acquire from itself as such receiver; or
> (ii) any claim relating to any act or omission of such institution or the Corporation as receiver.

12 U.S.C. § 1821(d)(13)(D).

Thus, "[c]ourts lack authority to review claims 'relating to any act or omission' of a failed bank or of the FDIC as receiver of a failed bank unless they are first subjected to

FIRREA's administrative claims process." *Farnik v. F.D.I.C.*, 707 F.3d 717, 722 (7th Cir. 2013) (also citing § 1821(d)(6)(A), allowing judicial review of claims after exhausting the administrative claim procedure).

"[T]he FIRREA administrative exhaustion requirement is based not on the entity named as defendant but on the actor responsible for the alleged wrongdoing." *Farnik*, 707 F.3d at 722. "'[W]here a claim is *functionally*, albeit not *formally*, against a depository institution for which the FDIC is receiver,' it falls under FIRREA." *Id.* at 722–23 (quoting *Am. Nat. Ins. Co. v. F.D.I.C.*, 642 F.3d 1137, 1144 (D.C. Cir. 2011)).

### 1. Section 1821(d)(13)(D) is Jurisdictional

Settlers first argues that § 1821(d)(13)(D) is not a jurisdictional bar but a claims processing scheme, and is thus waived because the Bank did not present it in its earlier motions to dismiss. Settlers cites *Campbell v. FDIC* for the proposition that, "While in the past we have referred to compliance with the FIRREA process as a strict jurisdictional prerequisite, the proper characterization of FIRREA's rules for claims submission as claims processing rules. *Campbell v. F.D.I.C.*, 676 F.3d 615, 618 (7th Cir. 2012) (internal citations omitted). However, the issue in *Campbell* was whether a claimant against the FDIC whose claim was denied as time-barred could challenge that denial in court. *Id.* at 616. In *Miller v. FDIC*, a Seventh Circuit clarified that, "When we announced that 'the proper characterization of FIRREA's rules for claims submission [is] as claims processing rules,' *Campbell*, 676 F.3d at 618, we were referring to the rules for submitting claims *to the FDIC* and the consequences for missing its deadline." *Miller v. F.D.I.C.*, 738 F.3d 836, 846 (7th Cir. 2013).

The *Campbell* opinion cites several recent Supreme Court cases for the distinction between jurisdictional rules and claims processing rules. *Campbell* at 618; *see e.g. Union Pac. R. Co. v. Bhd. of Locomotive Engineers & Trainmen Gen. Comm. of Adjustment, Cent. Region*, 558 U.S. 67, 81 (2009) ("Recognizing that the word 'jurisdiction' has been used by courts, including this Court, to convey many, too many, meanings we have cautioned, in recent decisions, against profligate use of the term.") (internal citations omitted). Instead, in determining whether a rule is jurisdictional or a claims processing rule, a court looks "to see if there is any

'clear' indication that Congress wanted the rule to be 'jurisdictional.'" Here, § 1821(d)(13)(D) provides that "no court shall have jurisdiction ..." That is, a clear indication that the statute is jurisdictional.

Settlers argues that *Reed Elesevier, Inc. v. Muchnick*, 559 U.S. 154 (2010) concluded that even a statute which used the term "jurisdiction" was a claims processing rule. Sure enough, the statute at issue in *Reed Elesevier* included the word "jurisdiction," but "significantly, § 411(a) expressly *allows* courts to adjudicate infringement claims involving unregistered works in three circumstances . . . ." *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 165 (2010). It was not a statutory command that no court shall have jurisdiction.

Further, the *Farnik* opinion distinguishes *Campbell* on the grounds that the plaintiffs in *Campbell* sought an extension of the claims filing deadline, while in *Farnik*, the plaintiffs sought to sidestep the administrative procedure altogether. *Farnik*, 707 F.3d at 721 n.1. The same situation arises here. Settlers seeks to present its claims directly to this court instead of seeking an extension of the claims bar deadline.

Thus, § 1821(d)(13)(D) is jurisdictional, and the issue has not been waived.

## 2. Notice and Claim Administration Procedures Under FIRREA are Consistent with Due Process

Settlers next argues that, even if § 1821(d)(13)(D) is jurisdictional, dismissing its remaining counts against would unconstitutionally deprive Settlers of due process of law because notice of the bar date under FIRREA was not adequately given. According to Settlers, it was entitled to written notice by mail of the bar date to present claims under FIRREA.

FIRREA provides that the FDIC may take over a failed bank and, as the bank's receiver, allow or disallow claims asserted against the bank. *Miller v. Federal Deposit Insurance Corp.*, 738 F.3d 836, 840 (7th Cir. 2013). In order that such claims are resolved quickly and efficiently, "FIRREA establishes strict administrative prerequisites and deadlines that claimants must follow to lodge their claims and challenge any denials." *Id.* It requires that any party wishing to pursue a claim against a failed institution or its assets must present that claim to the receiver, the FDIC. *Maher v. Harris Trust & Savings Bank*, 75 F.3d 1182, 1190

9

(7th Cir.1996), *as modified on clarification*, No. 951103 (Feb. 28, 1996) (citing 12 U.S.C. § 1821(d)(3)(5)). It requires that the FDIC publish notice of this deadline once a month for three months and the deadline must be at least 90 days after the date of the notice's first publication. *Miller*, 738 F.3d at 842 (citing 12 U.S.C. § 1821(d)(3)(B)(i), (ii)). The FDIC is also required to mail a notice of the deadline " 'to any creditor shown on the institution's books.' " *Miller*, 738 F.3d at 842 (quoting 12 U.S.C. § 1821(d)(3)(C)). If a claimant fails to submit a claim by the FDIC's deadline, then the claim " 'shall be disallowed and such disallowance shall be final.' "[2] *Id.* (quoting 12 U.S.C. § 1821(d)(5)(C)(i)).

Settlers' notice arguments are not persuasive for a number of reasons. As an initial consideration, it is unlikely that Settlers was the type of party entitled to notice in writing. Under FIRREA, the FDIC must publish a notice "to the depository institution's creditors" specifying a date by which claims must be presented, not less than 90 days after publication. 12 U.S.C. § 1821(d)(3)(B). Additionally, the FDIC must mail a "similar" notice to "any creditor shown on the institution's books." 12 U.S.C. § 1821(d)(3)(C). The parties in this case do not dispute that notice was given by publication. The parties also agree that the FDIC has no record of written notice having been sent to Settlers.

However, even assuming that Settlers was entitled to written notice under FIRREA and failed to receive such notice, this courts are not automatically vested with jurisdiction to consider claims which would have been subject to FIRREAs administrative claims procedures. Under FIRREA, untimely claims "shall be disallowed and such disallowance shall be final." 12 U.S.C. § 1821(d)(5)(C)(i). The only exception to disallowance is that a claim filed after the claims bar date "*may* be considered *by the receiver* if ... the claimant did not receive notice of the appointment of the receiver in time to file such claim before such date; and ... such claim is filed in time to permit payment of such claim." 12 U.S.C. § 1821(d)(5)(C)(ii) (emphasis added). Thus, even if Settlers failed to receive notice, any late-filed claims must still exhaust FIRREA's administrative procedures. *See Freeman v. FDIC*, 56 F.3d 1394, 1402 (D.C. Cir. 1995) (The "only consequence [of improper notice under FIRREA] is that the FDIC 'may' consider a late-filed claim.").

10

Moreover, not only has Settlers failed to show that it was entitled to written notice of the bar date as a "creditor on the books," but the facts alleged by Settlers in its Third Amended Complaint show that Settlers had actual notice of the receivership and the assignment of assets to the Defendant by the FDIC. Specifically, Settlers alleges that it mailed a letter to Defendant where it informed Defendant of the alleged fraud perpetrated by The Bank of Commerce. Under these circumstances, Settlers is deemed to have inquiry notice of the need to submit any claims to the FDIC and may not challenge the FDIC's notice procedures as constitutionally deficient. *See Tri-State Hotels, Inc. v. F.D.I.C.*, 79 F.3d 707, 716–17 (8th Cir. 1996).

As discussed below, however, with the exception of Count 10, subject matter jurisdiction is proper with respect to Settlers' remaining counts.

### C. AFFIRMATIVE DEFENSES ARE NOT JURISDICTIONALLY BARRED

Even though claims against the FDIC and its successors are barred, affirmative defenses are not. An affirmative defense is not an action or a claim, but a response to an action or a claim, and therefore is not barred by § 1821(d)(13)(D). *See Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. City Sav. F.S.B.*, 28 F.3d 376, 393 (3d Cir. 1994). In *National Union*, the Third Circuit held that, while petitioner was barred from offensively bringing a declaratory judgment action or suit for rescissory relief, it could still raise any affirmative defenses it had in any suit by a party seeking to enforce the loan obligations. *Id.* at 392–95. *See also Am First Fed., Inc. v. Lake Forest Park, Inc.*, 198 F.3d 1259, 1264 (11th Cir.1999) (agreeing "that an affirmative defense, that is, 'a response to a plaintiff's claim which attacks the plaintiff's *legal* right to bring an action,' . . . is not subject to the administrative exhaustion requirement of Section 1821(d)(13)(D).") (quoting Black's Law Dictionary 38 (6th ed. 1991) (emphasis in original)).

Settlers argues that remaining counts in its Third Amended Complaint are brought as defenses or objections to Schaumburg Bank's proof of claim. Schaumburg Bank maintains that Settlers' complaint pleads claims that are offensive in nature. "Whether an assertion is truly a defense, an affirmative defense, or a counterclaim is a question courts are competent

to answer." *Nat'l Union*, 28 F.3d at 394. A claim, which would be jurisdictionally barred by § 1821(d)(13)(D), "is essentially an action which asserts a right to payment." *Id.*

### 1. Jurisdiction is Proper as to Counts Seeking to Object and Disallow Schaumburg Bank's Claim Against the Estate.

To the extent that counts in Settlers' complaint are truly defenses, they will not be dismissed. To the extent some counts can be characterized as defenses and seek some affirmative relief, the affirmative relief cannot be granted by this court because § 1821(d)(13)(D) limits the jurisdiction of this courts to consider such claims. *See, e.g., RTC v. W.W. Dev. & Mgmt., Inc.*, 73 F.3d 1298, 1307 (3d Cir.1996) (considering whether party's petition to open judgment asserted separate claims which would be barred by § 1821(d)(13)(D) or whether it contained defenses that would not be barred).

Some procedural history will be helpful to determine which counts are truly defenses, and to what extent. After Settlers filed for bankruptcy, the Bank filed its proof of claim alleging a claim for almost five million dollars secured by mortgages in the Debtor's property. The Debtor filed this adversary proceeding against Schaumburg Bank, in part, to object to allowance of Schaumburg Bank's claim against the Debtor's estate. *See* Dkt. 1 (titled "Complaint for Equitable Subordination and other Relief *and Objection to Claim No. 12* (emphasis added).).

Section 501(a) of the Bankruptcy Code provides that the debtor's creditors "may file a proof of claim." A proof of claim filed under § 501 constitutes *prima facie* evidence of the validity and the amount of the claim. Fed. R. Bankr. P. 3001(f). Thus, pursuant to section 502(a), "[a] claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest . . . objects." 11 U.S.C. § 502(a). If a claim is objected to, "the court, after notice and a hearing, shall determine the amount of such claim in lawful currency of the United States as of the date of the filing of the petition, and shall allow such claim in such amount," except to the extent that it is subject to one or more of specified grounds for disallowance set forth in § 502(b), (d) or (e).

Under section 502(b), the court will disallow a claim if "such claim is unenforceable against the debtor and property of the debtor under any agreement or applicable law . . . ."

11 U.S.C. § 502(b)(1). Accordingly, Debtor may object to Schaumburg Bank's claim based on any legal theory challenging the validity or enforceability of the claim.

While Debtor's objection to Schaumburg Bank's claim is raised as part of an adversary complaint, counts for relief that could establish grounds for disallowance are more akin to a defense than to a claim for affirmative relief. In fact, Bankruptcy Rule 3007(b) requires the Debtor to file an adversary complaint to raise his pending objections to Schaumburg Bank's claim.

Pursuant to Bankruptcy Rule 3007(b), "[a] party in interest shall not include a demand for relief of a kind specified in Rule 7001 in an objection to the avoidance of a claim, but may include the objection in an adversary proceeding." Fed. R. Bankr. P. 3007(b). Bankruptcy Rule 7001 includes among the types of proceedings that must be brought by adversary complaint "a proceeding to determine the validity, priority, or extent of a lien or other interest in property . . . ." Fed. R. Bankr. P. 7001(2). A proceeding to subordinate a claim must also generally be asserted as part of an adversary proceeding. Fed. R. Bankr. P. 7001(8). In accordance with these standards, Settlers filed its objection to the bank's claim as an adversary proceeding, including its defenses as well as its claims for affirmative relief.

### 2. Fraud in the execution and unenforceability are defenses.

Counts 3, 6, and 9 are not jurisdictionally barred to the extent that they raise a defense against Schaumburg Bank's proof of claim. Count 3 alleges fraudulent misrepresentation related to fraud in the execution. Count 6 alleges fraud, illegality and unenforceability regarding the Washington-Taylor mortgage. Count 9 alleges unjust enrichment based on the improper retention of a mortgage. These counts seek to challenge the validity of Schaumburg Bank's claim, completely or in part, and thus provide adequate grounds for disallowance.

The allegations of fraud in the execution constitute a defense, even if Settlers also asks for affirmative relief. Two legal theories are defenses: (1) that Settlers was tricked into signing a mortgage that it did not know of and had not bargained for; and (2) that Settlers owned the property subject to the mortgage in trust under federal housing law. Under those legal theories, any mortgage would have been void *ab initio*. *See, e.g., In re Stewart*, 473 B.R.

13

612, 630 (Bankr. W.D. Pa. 2012) *aff'd*, No. ADV 10-2654, 2013 WL 4041963 (W.D. Pa. Aug. 8, 2013) (noting that rescission may be asserted as a defense to the bank's proof of claim). Those theories are discussed in more detail in memorandum opinions on earlier motions to dismiss. Dkt. 49 at 12-14, Dkt. 79 at 13. Accordingly, Counts 3, 5, 6 and 9 could establish grounds for disallowing Schaumburg Bank's claim as unenforceable.

Counts 3 and 5 include a request for damages, attorneys' fees, "and other and further relief as is just and proper." Counts 6 and 9 request avoidance of the mortgage, as well as damages, attorneys' fees, and further relief. Settlers is jurisdictionally barred from seeking damages. Even without the request for a judgment assessing damages, Settlers seeks to declare the mortgage void, which is a defense to the Bank's proof of claim.

Accordingly, Counts 3, 6, and 9 will not be dismissed. However, relief in these counts will be limited to that which is needed to dispute validity of Schaumburg Bank's claim.

### 3. Count 5 and Count 10 are not defenses to validity of Schaumburg Bank's claim

Count 5 alleges breach of the Illinois Consumer Credit Act arising from the alleged fraud in execution; Count 10 alleges civil conspiracy also based on the alleged fraud in execution. Both of these counts seek to impose liability on Defendant based on pre-receivership events involving the alleged fraud in execution.

While fraud in the execution can be a defense, allegations of a civil conspiracy to commit that fraud or of deceptive and unfair business practices are not defenses to a right claimed by Schaumburg Bank. Settlers' defense is that the mortgage was void, and that would arise from the fraud in the execution itself, not an agreement to defraud Settlers by the Bank and its officers, or from unfair business practices.

Counts 5 and 10 are counterclaims rather than affirmative defenses. "[I]f in addition to raising defenses or affirmative defenses to an action or a claim, a party also raises *counterclaims*, such counterclaims would fall under § 1821(d)(13)(D)'s jurisdictional bar, because a counterclaim *is* a 'claim.' . . . '[a] claim presented by a defendant in opposition to or deduction from the claim of the plaintiff.'" *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. City Sav., F.S.B.*, 28 F.3d 376, 394 (3d Cir. 1994) (quoting Black's Law Dictionary 349 (6th ed.

14

1990)) (emphasis in original).  If Settlers succeeded, any relief could offset the liability asserted in Defendant's proof of claim.  However, neither Count 5 or Count 10 would challenge the validity of Defendant's claim.

Settlers may not seek damages against Schaumburg Bank on the basis of acts and conduct by The Bank of Commerce.  Any such claim are subject to FIRREA's administrative procedures and would not constitute a defense to Schaumburg Bank's claim against the estate.

Accordingly, Counts 5 and 10 will be dismissed for lack of subject matter jurisdiction.

### 3. Equitable Subordination is not barred.

Count 1 for equitable subordination is not barred because it is not a "claim" for purposes of § 1821(d)(13)(D).  "An examination of FIRREA as a whole demonstrates that 'claim' is a term-of-art that encompasses only demands that are resolvable through the administrative process set out by FIRREA." *Am. Nat. Ins. Co. v. F.D.I.C.*, 642 F.3d 1137, 1142 (D.C. Cir. 2011).  A request for equitable subordination can only arise in the context of a bankruptcy.  11 U.S.C. § 510(c)(1).  Further, equitable subordination will not grant the Debtor affirmative relief.  Instead, it is a cause of action that seeks to challenge the right to recovery of a creditor *vis-à-vis* other creditors.

The Bank argues that a request for equitable subordination is more akin to a claim than it is to a defense.  That may be true, but it is not determinative.  What matters is that a request equitable subordination could not have been raised for determination by the FDIC as a "claim."  *C.f. RTC v. Midwest Fed. Sav. Bank of Minot*, 36 F.3d 785, 793 (9th Cir.1993) (concluding that FIIREA does "not divest a district court of jurisdiction over an affirmative defense . . . raised by a defendant . . . who had no independent basis for filing a claim . . . .").

Even though equitable subordination may not a kind of defense, it is analogous to a defense.  Just as a defense is not properly raised until after a lawsuit is filed, a request for equitable subordination cannot be raised until after a bankruptcy is filed.  Thus, barring an equitable subordination claim on the basis that it failed to exhaust FIRREA's administrative procedures would present the same kind of due process concerns as barring defenses that are not presented.  *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. City Sav., F.S.B.*, 28 F.3d 376,

15

395 (3d Cir. 1994) ("[I]t seems that it would be nearly impossible for a party to submit future hypothetical defenses to the administrative claims procedure—defenses to lawsuits which may not yet have brought against her or which may never be brought at all.").

Accordingly, Count 1 will not be dismissed.

### D. COUNTS PREDICATED ON POST-RECEIVERSHIP CONDUCT ARE NOT JURISDICTIONALLY BARRED

Counts 8 and 11 will also not be dismissed. Claims against the successor in interest for its own alleged wrongdoing, instead of the action of the predecessor in interest for which the FDIC was receiver (here, The Bank of Commerce), are not claims that would be jurisdictionally barred by § 1821(d)(13)(D). *See Am. Nat. Ins. Co. v. F.D.I.C.*, 642 F.3d 1137, 1142 (D.C. Cir. 2011) ("Because appellants' suit is against a third-party bank for its own wrongdoing, not against the depository institution for which the FDIC is receiver . . . their suit is not a claim within the meaning of [FIRREA] and thus is not barred by [§ 1821(d)(13)(D)]."); *Rosa v. Resolution Trust Corp.*, 938 F.2d 383, 394 (3d Cir.1991) (concluding that claims for damages against assuming bank for its own acts did not fall within jurisdictional bar under FIRREA because "they seek neither payment from nor a determination of rights with respect to the assets of [the bank-in-receivership]" but from the assuming bank).

Count 11 for tortious interference with contract pleads conduct by Schaumburg Bank after the FDIC receivership, not the actions of The Bank of Commerce before the receivership. Allegedly, Schaumburg Bank & Trust sent letters to Settlers tenants directing them to pay rent to the Bank rather than to Settlers. Thus, Count 11 cannot possibly be jurisdictionally barred by an FDIC receivership for pre-receivership debts.

Count 8 for setoff will not be dismissed because it seeks "To the extent the Court determines that Settlers owes a debt to Defendant, the amount thereof is subject to setoff against the amount that Defendant owes to Settlers." (¶ 304.) Count 11 for tortious interference with contract seeks damages for the actions of Schaumburg Bank, not the failed predecessor bank. Thus, it may be possible that Settlers debt to the Bank could be offset by a debt owed by the Bank to Settlers.

Accordingly, Counts 8 and 11 will not be dismissed.

### III. CONCLUSION

For the foregoing reasons, the motion to dismiss will be granted in part and denied in part by separate order.

Schaumburg Bank's motion will be granted with respect to Counts 5 and 10, and denied with respect to Counts 1, 3, 6, 8, 9 and 11. Relief in Counts 3, 6 and 9 will be limited to that which is needed to dispute validity of Schaumburg Bank's claim against the estate or otherwise disallow the bank's claim.

ENTER:

Jack B. Schmetterer
United States Bankruptcy Judge

Dated this 29 day of October, 2015

OCT 29 2015

Case No. 13 A 01328
Settlers' Housing Service, Inc. v. Schaumburg Bank & Trust Co., N.A.
Updated: February 10, 2015

## CERTIFICATE OF SERVICE

I, Dorothy Clay, certify that on  OCT 2 9 2015  , I caused to be served copies of the foregoing document to the following by U.S. Mail or by electronic mail to those who have consented to such service.

*Dorothy Clay*
Judicial Assistant/Deputy Clerk

## SERVICE LIST

**Electronic Service through CM/ECF System**

William J Factor
David Paul Holtkamp
Sara E Lorber
Jeffrey K. Paulsen
Law Office of William J. Factor, Ltd.
105 W. Madison, Suite 1500
Chicago, IL 60602
Counsel for Plaintiff

Francisco E Connell
Miriam R Stein
Chuhak & Tecson, P.C.
30 South Wacker Drive
Suite 2600
Chicago, IL 60606
Counsel for Defendant